UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S. Y.,

      Plaintiff,

v.                      Case No:  2:20-cv-624-JES-MRM

HOLIDAY HOSPITALITY
FRANCHISING, LLC and NAPLES
CFC ENTERPRISES, LTD.,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant Naples CFC Enterprises, Ltd.'s Motion to Dismiss or Alternatively to Strike Plaintiff's Complaint (Doc. #17) filed on October 13, 2020, and defendant Holiday Hospitality Franchising, LLC's Motion to Dismiss Plaintiff S.Y.'s Complaint and Memorandum of Law in Support Thereof (Doc. #23) filed on October 19, 2020.  Plaintiff filed an Opposition (Doc. #36; Doc. #39) to each motion on November 10th and November 16, 2020.  For the reasons set forth below, the motions are denied.

**I.**

The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida.  See S.Y. et al v. Naples Hotel Co.

et al, Case No. 2:20-cv-118 (Doc. #1, p. 3).  On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants.  Id. at (Doc. #1, pp. 2-4). The case was removed to federal court in February 2020.  Id. at (Doc. #1).  On April 15, 2020, the plaintiffs filed a Second Amended Complaint.  Id. at (Doc. #85).  On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020).  Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that plaintiff S.Y., a resident of Collier County, Florida, was a victim of continuous sex trafficking at a certain Staybridge Suites hotel in Naples, Florida between 2015 and February 2016.  (Id. ¶¶ 2, 13, 22-24, 189.)  The Complaint alleges that during this time period the Staybridge Suites was owned and operated by defendant Naples CFC Enterprises, Ltd. (Naples CFC) as a franchisee of defendant Holiday Hospitality Franchising, LLC (HHF).  (Id. ¶¶ 25-28, 49.)

The Complaint alleges the following six claims: (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO

2

statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise. (Id. pp. 32-48.) Counts One through Four are asserted against each defendant, while Counts Five and Six are asserted against Naples CFC. (Id.)

## II.

The motions to dismiss raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed. In response, plaintiff agrees to withdraw all but Counts One (violation of the TVPRA) and Two (violation of the Florida RICO statute). (Doc. #36, p. 1; Doc. #39, p. 1.) Accordingly, the Court will focus on the arguments relevant as to these remaining claims.

### A. Shotgun Pleading

The Complaint identifies the defendants collectively as the "Staybridge Suites Defendants." (Doc. #1, p. 1 introductory paragraph.) Both motions argue that because the Complaint groups them together, it should be dismissed as a shotgun pleading. (Doc. #17, pp. 6-7; Doc. #23, pp. 11-14.)[1]

---

[1] The page numbers refer to those generated by the Court's computer system upon filing (upper left-hand corner) and do not always correspond with the page number at the bottom of the document.

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1324-25 (11th Cir. 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does indeed repeatedly refer to the defendants collectively as the "Staybridge Suites Defendants." The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000). The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint. A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Staybridge Suites Defendants." While defendants may disagree that such allegations are accurate, that dispute is for another

day.  The group allegations do not fail to state a claim, <u>Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 953 F.3d 707, 732–33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.[2]

## B. Failure to State a Claim

The motions argue the TVPRA and RICO claims should be dismissed due to plaintiff's failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal,

---

[2] Naples CFC also cites over forty paragraphs from the Complaint as examples of "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." (Doc. #17, p. 6); <u>see</u> <u>Weiland</u>, 792 F.3d at 1322.  However, the vast majority of the allegations at issue address sex trafficking's prevalence at hotels, the defendants' knowledge thereof, and the sex trafficking of plaintiff.  (Doc. #1, ¶¶ 3, 5, 54-82, 88, 93, 124-31.)  Given the type of claims being alleged, the Court disagrees that such allegations render the Complaint a shotgun pleading.  <u>Cf.</u> <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); <u>Cramer v. State of Fla.</u>, 117 F.3d 1258, 1261 (11th Cir. 1997) ("Cramer and Kessler's complaint is a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming.").

the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**(1)  Trafficking Victims Protection Reauthorization Act**

Both motions challenge the one federal claim, the alleged violation of the TVPRA set forth in Count One.  The TVPRA provides a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a)  Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will

be caused to engage in a commercial sex act, shall be
punished as provided in subsection (b).

18 U.S.C. § 1591(a). To state a section 1595(a) claim in this
case, plaintiff must plausibly allege that she was a victim of a
criminal offense under section 1591(a), and then must plausibly
allege that defendant (1)"knowingly benefit[ted] financially or by
receiving anything of value," (2) from participation in a venture,
(3) which defendant "knew or should have known has engaged in" sex
trafficking under section 1591(a). S.Y., 476 F. Supp. 3d at 1255-
56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181
(E.D. Pa. 2020)).

### (a) "Participation" in a "Venture"

The motions argue that the Complaint lacks well-pled
allegations that the defendants participated in a "venture," as
required by section 1595(a). (Doc. #17, pp. 8-9; Doc. #23, pp.
18-19.) Drawing on the definition of "venture" used in the
criminal portion of the statute, 18 U.S.C. § 1591(e)(6)[3], HHF
argues that renting a room to a trafficker is insufficient to show
HHF participated in a TVPRA venture. (Doc. #23, pp. 18-19); see
also Doe v. Rickey Patel, LLC, 2020 WL 6121939, *5 (S.D. Fla. Sept.
30, 2020) ("In order to plead Defendants participated in a venture,

---

[3] "The term 'venture' means any group of two or more
individuals associated in fact, whether or not a legal entity."
18 U.S.C. § 1591(e)(6).

Plaintiff must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker." (marks omitted)). Having reviewed the allegations at issue, the Court finds them sufficient.

The Complaint alleges the defendants participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Staybridge Suites to people" the defendants "knew or should have known were engaged in sex trafficking." (Doc. #1, ¶ 154.) The Complaint also alleges why the defendants should have been on notice of the sex trafficking and how they failed to prevent it. (Id. ¶¶ 4-16, 54-82, 109.) The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a). See Doe, 2020 WL 6121939, *5 ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); M.A. v. Wyndham Hotels & Resorts, Inc., 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that

Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

The defendants also argue that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is insufficient. (Doc. #17, pp. 8-9; Doc. #23, pp. 18-19.) The Court is not convinced. S.Y., 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its section 1595 claim under the TVPRA."). The defendants have not identified any controlling authority to the contrary.[4]

### (b) Knowingly Benefited From Participating in Venture

The motions next argue that the Complaint insufficiently alleges the defendants knowingly benefitted from participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship. (Doc. #17, pp. 9-11; Doc. #23, pp. 19-21.) HHF argues that "[a]t most, the Complaint alleges HHF benefits from an indirect franchising relationship with the Hotel's third-party

---

[4] For the same reason, the Court denies HHF's request for the Court to "reconsider" whether "actual" participation is required to state a claim under section 1595. (Doc. #23, p. 18 n. 6.)

franchisees, which may have rented a room to a trafficker." (Doc. #23, p. 21.)

The Complaint alleges the defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Staybridge Suites," and by receiving "other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking." (Doc. #1, ¶ 152.) As to HHF as franchisor, the Complaint alleges it "received a significant franchise fee and continuous royalties on the Staybridge Suites' gross revenue," while also exercising "ongoing and systematic control over operations at the Staybridge Suites." (Id. ¶¶ 43, 109.) The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element. S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, *5 (S.D. Ohio Mar. 16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

### (c) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

The motions argue the Complaint fails to plausibly allege the defendants knew or should have known of an act in violation of the TVPRA, i.e., that plaintiff was caused to engage in commercial sex by force, fraud, or coercion. (Doc. #17, p. 11; Doc. #23, pp. 15-17.) HHF argues it is insufficient to allege the defendants had

generalized knowledge that trafficking sometimes occurs in hotels, and there are no allegations supporting a plausible inference "that HHF knew or should have known about the *specific instances of Plaintiff's sex trafficking*." (Doc. #23, p. 16.)

The Court disagrees with this argument. First of all, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. at 686-87. The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the Staybridge Suites as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

    b. Plaintiff's sex traffickers paid cash for the rooms at the Staybridge Suites where the Plaintiff engaged in commercial sex acts;

    c. Plaintiff's sex traffickers booked extended stays at the Staybridge Suites for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

    d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e. Plaintiff was confined in the rooms at the Staybridge Suites for long periods of time;

f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

g. Men ("Johns") frequently entered and left the rooms at the Staybridge Suites where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h. The staff and customers at the Staybridge Suites that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Staybridge Suites Defendant saw and/or reported to the Staybridge Suites's respective administration that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

i. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

j. Plaintiff would frequently request clean towels and linens;

k. Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Staybridge Suites Defendant [sic];

l. Excessively loud noises would consistently come from Plaintiff's rooms;

m. During nighttime hours, Plaintiff and her "Johns" and drug clients would create noise in the public area of the Staybridge Suites and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes;

n. Plaintiff would sleep during the day and the staff members of the Staybridge Suites would consistently see the Plaintiff wearing lounge or sleep type clothing during the day; and

o. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

(Doc. #1, ¶ 93.)   Further, the Complaint alleges the defendants "knew or should have known about the nature of the sex trafficking venture at the Staybridge Suites, including as they related to Plaintiff S.Y." due to the following:

a. Requests by the traffickers to rent rooms near exit doors;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Excessive requests for towels and linens in the rooms used for sex trafficking;

f. Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

g. Plaintiff S.Y. being escorted by traffickers in and around the hotel;

h. Pleas and screams from [sic] help coming from the rooms of Plaintiff S.Y.;

i. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

j. Multiple men per day coming and going from the same rooms without luggage or personal possessions; and

k. Knowledge of police and EMS activity at the Staybridge Suites and at other locations near the Staybridge Suites that was related to commercial sex work.

(Id. ¶ 153.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. <u>S.Y.</u>, 476 F. Supp. 3d at 1257; <u>A.B.</u>, 455 F. Supp. 3d at 193-94; <u>Doe S.W.</u>, 2020 WL 1244192, *5-6; <u>H.H.</u>, 2019 WL 6682152, *3; <u>M.A.</u>, 425 F. Supp 3d at 967-68.[5]

### (d) **Vicarious Liability**

Finally, HHF argues the TVPRA claim should be dismissed because plaintiff's allegations of vicarious liability and an agency relationship are insufficient as a matter of law. (Doc. #23, pp. 21-25.)[6] Having reviewed the allegations at issue, the Court finds them sufficient to create a plausible inference of an agency relationship.

---

[5] HHF also argues the Complaint contains insufficient allegations to suggest it should have known plaintiff was being forced or coerced to commit commercial sex acts. (Doc. #23, p. 17.) However, the Court finds the Complaint contains sufficient allegations to survive dismissal. (Doc. #1, ¶¶ 57, 68, 93, 130-31, 153.)

[6] To the extent HHF suggests vicarious liability is unavailable under the TVPRA (Doc. #23, p. 21 n. 7), the Court disagrees. <u>See</u> <u>S.Y.</u>, 476 F. Supp. 3d at 1257-58 (finding plaintiff made sufficient allegations that franchisor was vicariously liable under section 1595 of the TVPRA to survive dismissal); <u>see also</u> <u>J.C. v. Choice Hotels Int'l, Inc.</u>, 2020 WL 6318707, *10 (N.D. Ca. Oct. 28, 2020) (finding plaintiff's vicarious liability claim had "alleged sufficient facts to support a plausible claim that [defendants] received financial benefits from a venture they vicariously participate in (through their franchisees) that the franchises should have known was engaged in sex trafficking").

"It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014). However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 120 (Fla. 1995).

Here, the Complaint alleges HHF was in an agency relationship with Naples CFC during the relevant time period. (Doc. #1, ¶ 109.) The Complaint further asserts that in a variety of ways HHF exercised control over the means and methods of how Naples CFC conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing. (Id. ¶ 110.) The Court finds such allegations sufficient to support a plausible inference of an agency relationship. See S.Y., 476 F. Supp. 3d at 1258; A.B., 455 F. Supp. 3d at 195-97; Doe S.W., 2020 WL 1244192, *7; H.H., 2019 WL 6682152, *6; M.A., 425 F. Supp. 3d at 972.[7]

_____

[7] To the extent HHF suggests such a relationship does not in fact exist (Doc. #23, pp. 22-24), such a determination "is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies the motions for dismissal pursuant to Rule 12(b)(6).

**(2) Florida RICO Violation**

Count Two of the Complaint asserts a claim against both defendants under Florida's civil RICO statute, section 772.104, Florida Statutes. (Doc. #1, p. 34.) To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity." Horace-Manasse v. Wells Fargo Bank, N.A.,

---

contract in which case the determination may be a question of law to be determined by the court." Cain, 994 F. Supp. 2d at 1253. Since the Complaint alleges an agency relationship based upon the interaction between HHF and Naples CFC, this is a question of fact inappropriate to decide on a motion to dismiss. See Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V., 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances."); see also A.B. v. Hilton Worldwide Holdings Inc., 2020 WL 5371459, *10 (D. Or. Sept. 8, 2020) ("Defendants dispute whether they controlled the day-to-day operations of the hotels. Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceedings this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor."); A.B., 455 F. Supp. 3d at 196 ("The evidence may ultimately prove Marriott does not exercise day-to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.").

521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[8]

Each of the motions argue plaintiff has insufficiently pled the enterprise element of her claim. (Doc. #17, pp. 12-13; Doc. #23, pp. 25-26.) Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity." § 772.102(3), Fla. Stat. "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted).

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged

---

[8] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight." O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges the defendants "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 159.) Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme." (Id. ¶¶ 159-60.) The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted));

Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion").

The motions next argue that the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #17, p. 13; Doc. #23, p. 26.) As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity." Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.). The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if it is 'chargeable by indictment or information' and falls within a series of specified provisions." Id. (citing § 772.102(1)(a), Fla. Stat.). "In order to establish a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

Plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes. (Doc. #1, ¶¶ 161, 163); see also § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute). This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking." § 787.06(3), Fla. Stat.

HHF argues that because the Complaint groups the defendants together, it lacks specificity as to which defendant committed which acts in furtherance of the enterprise and, therefore, fails to allege a pattern of criminal activity. (Doc. #23, p. 26.) Similarly, Naples CFC asserts that the predicate violations of section 787.06(3) are not supported by any specific factual allegations against Naples CFC. (Doc. #17, p. 13.) HHF also argues the Complaint "[a]t most" alleges HHF "was passive" and "enabled trafficking." (Doc. #23, p. 26.) Having reviewed the allegations at issue, the Court finds them sufficient.

The Complaint alleges plaintiff was trafficked on a "regular, consistent and/or repeated basis" at various hotels in Naples,

Florida, and at the Staybridge Suites beginning in April 2014. (Doc. #1, ¶ 83.)  The Complaint describes how the sex trafficking occurred at the Staybridge Suites and the "routine conduct" taking place as a result, as well as alleges the defendants' employees participated in the trafficking, made promises to the traffickers not to interfere with it, and knowingly turned a blind eye to it. (Id. ¶¶ 87-88, 93, 129-31, 135.)  Viewing the allegations in the light most favorable to plaintiff, the Court finds them sufficient to allege a pattern of criminal activity for purposes of Florida's RICO statute.

Finally, the motions argue the RICO claim fails to plausibly allege plaintiff's harm was caused by the defendants.  (Doc. #17, p. 13; Doc. #23, p. 26 n. 9.)  Under the Florida RICO statute, a plaintiff must demonstrate that their injuries were proximately caused by the RICO violations.  See Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. 4th DCA 2009).  "A wrongful act is a proximate cause if it is a substantive factor in the sequence of responsible causation."  Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1307 (11th Cir. 2003) (marks and citation omitted).  Furthermore, a plaintiff "must show a 'direct relation between the injury asserted and the injurious conduct alleged.'"  Id. (quoting Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)).  "Indirect harm is insufficient to sustain a cause of action under the RICO statutes."  Bortell, 2

So. 3d at 1047; <u>see also</u> <u>O'Malley</u>, 599 So. 2d at 1000 ("[I]ndirect injuries, that is, injuries sustained not as a direct result of predicate acts . . . will not allow recovery under Florida RICO.").

The Complaint alleges each of defendants "was on notice of repeated incidences of sex trafficking occurring on their hotel premises," and yet "failed to take the necessary actions to prevent sex trafficking from taking place." (Doc. #1, ¶ 59.) The Complaint also alleges numerous ways in which the defendants could have identified and prevented the sex trafficking from occurring. (<u>Id.</u> ¶¶ 61-76.) Finally, the Complaint alleges the "acts and omissions of the Staybridge Suites Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization" of plaintiff "for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking." (<u>Id.</u> ¶ 123.) "[B]y knowingly, or with reckless disregard, repeatedly allowing sex trafficking to occur on their premises between 2015 and 2016," the defendants' "acts have yielded consistent results and caused economic, physical, and psychological injuries" to plaintiff. (<u>Id.</u> ¶¶ 162, 165.)

The Court finds these allegations sufficient to plead a "direct relation between the injury asserted and the injurious conduct alleged," <u>Holmes</u>, 503 U.S. at 268, and therefore the Complaint adequately pleads proximate cause, <u>see</u> <u>Burgese</u>, 101 F.

Supp. 3d at 422 (finding allegations of physical injury and mental anguish "cognizable under the Florida RICO Act" and sufficient to survive a motion to dismiss); cf. Berber, 2018 WL 10436236, *5 ("Because Plaintiffs' asserted injuries arise from a set of actions entirely distinct form [sic] the alleged predicate RICO violations, proximate cause is lacking as a matter of law.").

Accordingly, the Court finds the Complaint's Florida RICO claim sufficiently plead and therefore will deny the motions to dismiss the claim.

### C. Anonymity

Finally, Naples CFC argues that plaintiff is not entitled to proceed anonymously as a matter of right, and that plaintiff must be required to file a formal motion to do so. (Doc. #17, p. 17.) On February 24, 2021, plaintiff filed a Motion to Proceed Anonymously and for Entry of a Protective Order. (Doc. #50.) Therefore, this issue is moot.

Accordingly, it is now

**ORDERED:**

1. Defendant Naples CFC Enterprises, Ltd.'s Motion to Dismiss or Alternatively to Strike Plaintiff's Complaint (Doc. #17) is **DENIED as moot** as to Counts Three, Four, Five, and Six of the Complaint, and otherwise **DENIED.**

2. Defendant Holiday Hospitality Franchising, LLC's Motion to Dismiss Plaintiff S.Y.'s Complaint and Memorandum of Law

in Support Thereof (Doc. #23) is **DENIED as moot** as to Counts Three and Four of the Complaint, and otherwise **DENIED**.

3. Plaintiff shall file an Amended Complaint within **SEVEN (7) DAYS** of this Opinion and Order to reflect the voluntary dismissal of the four state claims.

**DONE AND ORDERED** at Fort Myers, Florida, this __4th__ day of May, 2021.

John E. Steele
_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record